**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GET-ER-DONE DRILLING, INC. A          )
Pennsylvania Corporation,             )
                                      )
    **Plaintiff**          )
          **vs.**          )      **Civil No. 16-1426**
                                      )      **Magistrate Judge Lenihan**
US CROSSING UNLIMITED, LLC., A        )      **ECF No. 5**
Delaware Limited Liability Company,   )
And MICHAEL LIND, an adult            )
individual.                           )
                                      )
    **Defendants.**         )

**OPINION ON MOTION TO DISMISS CLAIMS AGAINST DEFENDANT**
**MICHAEL LIND, INDIVIDUALLY, FOR LEGAL INSUFFICIENCY**

Currently pending before the Court is Defendants' US Crossings[1] Unlimited, LLC ("US Crossings") and Michael Lind ("Defendant Lind")'s motion to dismiss the amended complaint filed by Plaintiff Get-Er-Done Drilling, Inc. as against Defendant Michael Lind, individually (ECF No. 5). For the reasons set forth below, the Court will grant the motion to dismiss in part without prejudice to file a second amended complaint within fourteen (14) days of the date of the filing of this opinion, and otherwise deny the motion.

**I.    Background.**

On September 14, 2016, Plaintiff filed a Complaint against the defendants. See ECF No. 1. On September 19, 2016, this Court ordered Plaintiff to file, within fourteen (14) days, an amended complaint that set forth sufficient factual allegations to establish diversity of citizenship among the parties or, if diversity was lacking, a notice of voluntary dismissal. See ECF No. 2.

---

[1]Although the caption of the Amended Complaint refers to this defendant as "US Crossing Unlimited, LLC" Plaintiff consistently uses the plural of "Crossings" in referring to the defendant in the body of the Amended Complaint, and the defendants also use the plural form in all of their filings with the Court. Therefore, the Court assumes that the omission of the "s" from "Crossing" in the caption is a typographical error and henceforth will refer to the defendant as US Crossings.

On October 7, 2016, Plaintiff filed a twenty-one (21) count Amended Complaint against the defendants, alleging breach of contract, unjust enrichment, promissory estoppel, and conversion claims against both defendants. See ECF No. 3. The eleven (11) claims against Defendant Lind are set forth in Counts VII (promissory estoppel-Rice Rental), IX (unjust enrichment-Caldwell Job), X (promissory estoppel-- Caldwell Job), XI (breach of contract-Clarksburg Job), XII (unjust enrichment- Clarksburg Job), XIII (promissory estoppel- Clarksburg Job), XVII (conversion- Jewett Conversion), XVIII (unjust enrichment- Jewett Conversion), XIX (breach of contract-Moundsville Job), XX (unjust enrichment- Moundsville Job), and XXI (conversion) of the Amended Complaint. Id.

On January 27, 2017, Defendants filed the pending motion to dismiss the amended complaint against Defendant Lind, individually (ECF No. 5), as well as a brief in support of the motion to dismiss (ECF No. 6). On February 23, 2017, Plaintiff filed an answer to the motion to dismiss (ECF No. 15) and a brief in support of its answer to the motion to dismiss (ECF No.16). On February 24, 2017, Plaintiff filed an Errata to its supporting brief; in the Errata it changed the name of its supporting brief to "Brief in Opposition to Motion to Dismiss Claims Against Michael Lind, Individually, for Legal Insufficiency" (ECF No. 20). Thus, the motion is ripe for disposition.

## II. Standard of Review.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), the complaint must

provide "enough factual matter (taken as true)" to suggest the required elements of the claim presented.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

In assessing the merits of a claim subject to a motion to dismiss, the court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the nonmoving party, here Plaintiff Get-Er-Done Drilling, Inc.  Phillips, 515 F.3d at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F. 3d 651, 653 (3d Cir. 2003)).  A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  Fowler v. UPMC Shadyside, 578 F. 3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., Civ. A. No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

### III.    Factual Allegations from Plaintiff's Complaint.

Accepting as true Plaintiff's factual allegations in its Amended Complaint and all reasonable inferences therefrom, following is a recitation of the factual allegations contained in Plaintiff's Amended Complaint that are relevant to Defendants' motion to dismiss the claims brought by Plaintiff against Defendant Lind in his individual capacity.

This action is brought pursuant to a breach of contract by the Defendant[2]. ECF No. 3, ¶ 1. During all times mentioned in the Amended Complaint, Plaintiff was and is, a Pennsylvania Corporation, created and existing by virtue of the laws of Pennsylvania. Id., ¶ 3.  Plaintiff's CEO is Perry Rowan ("Mr. Rowan").  Id., ¶ 121.  US Crossings is a Limited Liability Company created and organized in the state of Delaware with a primary place of business at 20436 US Route 19, #620-244, Cranberry Township, PA, 16066, without any members or shareholders

---

[2] When the Court references generically the "Defendant" in its review of the factual allegations contained in Plaintiff's Amended Complaint, it is because the plaintiff has not indicated to which of the two defendants it is referring and the Court has not been able to make the determination on its own.

who are residents of Pennsylvania. Id., ¶ 4. Defendant Lind is an adult individual whose residence is believed to be in Wheeling, West Virginia. Id., ¶ 5. Defendant Lind is the Chief Executive Officer of US Crossings Unlimited.[3] Id.

The parties entered into a series of verbal contracts regarding Plaintiff providing services in the form of horizontal drilling at various locations and US Crossings utilizing a number of Plaintiff's pieces of equipment in exchange for 50% of the contract price for any such project or job. Id., ¶¶ 6-7. The parties agreed the Defendant would guarantee return of all equipment as it was received. Id., ¶ 8. The defendants (meaning Defendant Lind personally) took numerous pieces of heavy equipment without permission from Plaintiff and used the equipment for their own benefit. Id.,¶¶ 9, 122-126, 132-142.

Each contract of material was formed between the parties by Defendant Lind, acting as the agent of, and on behalf of, US Crossings, contacting Plaintiff at its place of business, or otherwise taking control of Plaintiff's property from Plaintiff's Greene County, Pennsylvania office location. Id.,¶ 10. When named personally, it is alleged that Defendant Lind personally participated in such tortious actions in committing them even if on behalf of US Crossings. Id., ¶ 11.

The relationship of the parties began with a verbal contract made on or about November 5, 2014, for a 26" bore for a length of 510 feet near Glen Burnie, Maryland at a cost of $40,000 ("the Maryland Job"). Id., ¶¶ 13-14. Plaintiff satisfactorily completed the bore in November, 2014, and invoiced US Crossings on January 16, 2015, with the $40,000 payment due by February 15, 2015. Id., ¶¶ 15-16 and Exhibit A. On or about January 30, 2015, US Crossings paid Plaintiff $10,000. Id.,¶ 17. US Crossings paid Plaintiff another $20,000 towards

---

[3]Defendants state that Defendant Lind actually is the Managing Member of US Crossings. See Defendants' Supporting Brief, p. 4, n. 1.

this invoice on or about February, 2016.  <u>Id.</u>, ¶ 18.  The remaining $10,000 owed to Plaintiff for the Maryland Job has not been paid.  <u>Id.</u>, ¶ 19.

In early summer 2015, the parties verbally contracted for additional bores that were to be a part of the Whipkey to Tetco pipeline for Rice Poseidon Midstream, LLC in Richhill Township, Greene County, Pennsylvania ("the Rice Job"), at a cost of $140.00 per foot on an 8" line and $208.00 per foot on a 12" line.  <u>Id.</u>,¶ 22.  Plaintiff satisfactorily completed five 8" bores of varying lengths, for which the Plaintiff had to twice mobilize and demobilize his workforce under the verbal Rice Job agreement, at a cost of $16,000 per mobilization and demobilization.  <u>Id.</u>, ¶¶ 23-25.

Related to these five bores for the Rice Job, Plaintiff submitted five invoices to US Crossings: (1) a bill for $44,800.00, submitted on May 13, 2015, which was due on June 12, 2015; (2) a bill for $72,800.00, submitted on May 20, 2015, which was due on June 19, 2015; (3) a bill for $119,150.00, submitted on August 15, 2015, which was due on  September 14, 2015; (4) a bill for $119,150.00, submitted on September 5, 2015, which was due on October 5, 2015; and (5) a bill for $79,800.00, submitted on September 24, 2015, which was due on November 23, 2015.  <u>Id.</u>, ¶ 26.  On or about July 6, 2015, US Crossings made a payment to Plaintiff in the amount of $40,720.00 for the bill submitted on May 13, 2015.  <u>Id.</u>, ¶ 27.   On or about July 28, 2015, US Crossings made a payment to Plaintiff in the amount of $65,000.00 for the bill submitted on May 20, 2015.  <u>Id.</u>,¶ 28.  On or about September 26, 2015, US Crossings made a payment to Plaintiff in the amount of $77,491.00 for the bill submitted on August 15, 2015.  <u>Id.</u>, ¶ 29.

Plaintiff satisfactorily completed all work on the Rice Job.  <u>Id.</u>, ¶33.  US Crossings is believed to have received compensation from the project owner as a result of Plaintiff's work on

the Rice Job.  <u>Id.</u>, ¶ 34.   The defendants promised to justly compensate Plaintiff for work it performed on their behalf for the Rice Job.  <u>Id.</u>,¶ 37.

In September 2015, following the portion of the Rice job in which Plaintiff directly provided work, US Crossings and Plaintiff verbally agreed that US Crossings could rent a 312 Caterpillar Hoe and additional equipment for four (4) months for a share of the profits ("the Rice Rental").  <u>Id.</u>,¶ 40.   Plaintiff charged the reasonable rate of $5000.00 per month with the total equipment rental fee being $20,000.  <u>Id.</u>,¶¶ 43-44.  By verbal agreement, Plaintiff also provided labor to US Crossings during this time for clearing a bore path on the Rice Job for Clearpath Utilities to complete a bore, at the reasonable rate of $10,000.  <u>Id.</u>,¶ 41. The labor was a crew of 2-3 employees, for between 80-100 hours per week, for a total of 320 to 420 hours for one month, for which Plaintiff charged US Crossings a flat rate of $15,000.00.  <u>Id.</u>,¶ 42.   Plaintiff submitted a bill to US Crossings for all charges related to the Rice Rental on September 24, 2015, with a due date of October 24, 2015, but Plaintiff has not received any payment related to the Rice Rental.  <u>Id.</u>, ¶ 45.

From July 2015 to September 2015, the parties verbally contracted for Plaintiff to do a 759 feet long bore at a width of 20" near Caldwell, Ohio (the "Caldwell Job").  <u>Id.</u>,¶ 54. Defendants promised compensation to Plaintiff for its work.  <u>Id.</u>,¶ 72.  All work was completed by Plaintiff in a satisfactory and workmanlike manner.  <u>Id.</u>,¶¶ 64, 72.  During this time, US Crossings was working under a general contractor, Sunland Construction, Inc., in the construction of a pipeline for Antero Resources.  <u>Id.</u>, ¶ 55.  On or about September 8, 2015, Plaintiff submitted an invoice to US Crossings for the Caldwell Job in the amount of $144,375.00.  <u>Id.</u>,¶ 56.  Defendants promised Plaintiff compensation for the work, but Plaintiff has not received any payment from the defendants for the Caldwell Job. <u>Id.</u>,¶¶ 60, 65, 72-73.

Plaintiff completed the work on the Caldwell job in a satisfactory and workmanlike manner.  Id., ¶¶ 64,71.

Related to the Caldwell Job, US Crossings also utilized Plaintiff's equipment in order to complete its portion of the work.  Id.,¶ 57.  During the time US Crossings was using Plaintiff's equipment on the Caldwell Job, it destroyed a mud and water pump on Plaintiff's drill.  Id. During this same time period, US Crossings and its employees acting under Defendant Lind's direction, also damaged a plunger and anchor base on Plaintiff's drilling equipment.  Id.,¶ 58. The cost to repair the drill and replace the pump was $21,023.04.  Id.,¶ 59.  Defendants promised Plaintiff compensation for the use of its equipment, but no payment has been received by Plaintiff for the damaged equipment.  Id.,¶¶ 60, 66, 74.

In September of 2015, US Crossings asked Plaintiff to provide equipment for it to do a 16" bore outside of Clarksburg, West Virginia for a length of fifty feet.  Id.,¶ 77.  Plaintiff agreed to provide the equipment for the bore for a 50% share of the job; according to Defendant, the payment for this job was to be $225,000. Id., ¶¶ 78-79.  Defendants promised compensation to Plaintiff for the use of the equipment.  Id.,¶ 94.  On November 5, 2015, Plaintiff submitted an invoice to US Crossings for $112,500.00, its 50% share.  Id.,¶80.  During this time, US Crossings and its employees, acting under Defendant Lind's direction, damaged Plaintiff's AT60 All-Terrain drill, had it serviced by Ditchwitch, and had the $1577.95 cost of repair billed to Plaintiff.  Id.,¶ 81.  As a result of the damage caused by or at the direction of Defendant Lind, Plaintiff had to pay the $1,577.95 repair bill out of pocket. Id., ¶ 82.  The Defendants have not compensated Plaintiff for the use of its equipment on the Clarksburg Job or for damaging Plaintiff's equipment. Id.,¶¶ 87, 88, 95.

In September 2015, Defendant Lind, on behalf of US Crossings, verbally contracted with Plaintiff to do three bores near Jewett, Ohio (the "Jewett Job"). Id., ¶ 99. Defendants promised Plaintiff compensation for the work. Id., ¶ 108. On October 31, 2015, Plaintiff submitted an invoice for the work done on the Jewett Job to US Crossings in the amount of $98,750.00. Id., ¶ 102. Payment was due on November 30, 2015, but no payment has been received. Id., ¶¶ 103, 109, 110, 116, Exhibit M. All work by Plaintiff on the Jewett Job was completed in a satisfactory and workmanlike manner. Id., ¶¶ 101, 107,115.

On or about October 8, 2015, Plaintiff's CEO, Mr. Rowan, suffered a stroke. Id.,¶ 121. After Mr. Rowan's stroke, Defendant Lind unilaterally took possession of Plaintiff's equipment and used it for his own benefit (the "Jewett Conversion"). Id.,¶ 122. The Jewett Conversion was done without the permission of Plaintiff or any of its agents. Id.,¶ 123. Defendant Lind's actions included tearing all identifying company logos of Plaintiff off of trucks and a drill. Id.,¶ 124. Defendant Lind also told Plaintiff's employees that he had bought the company and its equipment from Mr. Rowan and paid Plaintiff's employees for two weeks' work when he continued to operate in Jewett. Id., ¶ 125. Defendant Lind personally told Plaintiff's employees to do a 150 foot bore of 24". Id.,¶ 126. Plaintiff offered to do this bore at a reduced rate of $250.00 per linear foot in the hopes that the reduced rate might facilitate payment on the prior jobs which were still outstanding. Id.,¶¶ 127 and 129. The cost of this bore was $37,500.00. Id., ¶ 128.

As a result of the Jewett Conversion, as a direct result of the actions of Defendant Lind, substantial damage was done to the anchor base of Plaintiff's drill; the cost to repair the drill is $6,810.72. Id.,¶¶ 130-131. Additionally, US Crossings used and damaged numerous "power pipe" drill rods and ten power pipe collars which could not be reused by Plaintiff; each of these

drill rods cost Plaintiff $1400.00 and each of the collars cost Plaintiff $144.33. Id.,¶ 132.

Plaintiff has not received any payment from Defendants for the unauthorized use of its

equipment or for the damage done to its equipment. Id.,¶¶ 133,141. The additional use and

destruction of the power pipe drill rods has cost Plaintiff approximately $191,274.30. Id.,¶ 134.

Defendant Lind and his employees further damaged Plaintiff's AT4020 drill by causing damage

to an O ring, draining the drill of a substantial amount of hydraulic fluid. Id.,¶ 135. Defendant

Lind personally participated in the taking of Plaintiff's equipment by taking personal control of

items to which he had no permission, license or entitlements, and personally ripped off the

stickers and signage on all of Plaintiff's trucks; the cost to replace the signage and stickers on

Plaintiff's equipment cost approximately $750.00. Id.,¶ 137.

Defendant Lind asked Plaintiff if he could use Plaintiff's drill to do a three hundred foot

long bore of 4" in width through his yard in Belmont, Ohio. Id.,¶ 144. US Crossings then took

Plaintiff's drill and used it for a 12" bore for a length of 750 feet near Moundsville, West

Virginia (the "Moundsville Job"). Id.,¶ 145. Pursuant to the parties' agreement, Plaintiff should

have received a 50% share of the profit from the job. Id.,¶ 146. The rate for a 12" bore is

$280.00 a foot and therefore, Plaintiff's share of the Moundsville Job is $112,000. Id.,¶ 147. On

January 7, 2016, Plaintiff submitted an invoice to US Crossings for $112,000 for the

Moundsville Job, with payment due on February 6, 2016, but no payment has been received for

this invoice. Id., ¶¶ 148-149, 153, Exhibit Q.

Defendant Lind took numerous items from Plaintiff's stockyard under the premise that he

would be using them for jobs through his operation of US Crossings and would compensate

Plaintiff. Id.,¶ 156. In addition, US Crossings has retained: (1) a 20" Auger Boring Machine

valued at $40,000.00; (2) 70 feet of 4" auger, valued at $2,800.00; (3) 70 feet of 12" auger,

valued at $5,600.00; (4) 70 feet of 16" auger, valued at $6,300.00; (5) 70 feet of 20" auger, valued at $7,000.00; (6) 70 feet of 24" auger, valued at $8,400.00; (7) hole openers with widths of 36" and 30" and tri-wing reamers of 18", 24," and 30," valued at $72,500.00; and (8) eight auger bits of 16," 20," and 24 inches, valued at a combined value of $16,000.00. Id.,¶ 157. Defendant Lind has the authority and ability to return these items and refuses. Id.,¶ 158. Defendants have refused requests to return the items. Id.,¶ 159. On January 27, 2016, Plaintiff submitted an invoice to US Crossings for $158,600.00 for the cost of these items, with a due date for payment of February 26, 2016. Id., ¶ 160, Exhibit R.

In or about mid-May 2016,[4] Defendant Lind contacted Plaintiff to let it know that it could pick up the equipment in Ohio, despite the fact that Defendant Lind took the materials himself, without permission. Id., ¶ 161. Plaintiff is unable to retrieve the items due to licensing and cost issues associated therewith. Id., ¶ 162. Defendant Lind has refused to return the items he took. Id.,¶ 163.

IV. **Legal Analysis.**

A. **Application of Delaware law based on judicial comity.**

Defendants first argue in support of their motion to dismiss Plaintiff's claims against Defendant Lind that this Court should apply Delaware law to the issue of Defendant Lind's individual liability to Plaintiff under principles of judicial comity. ECF No. 6 at 2-5. Defendants contend that the Pennsylvania legislature has indicated its hope that other states will analyze the rights and liabilities of Pennsylvania limited liability companies and its members under Pennsylvania law, and Plaintiff has admitted that Defendant Lind "was at all times acting as agent for, and on behalf of, Defendant US Crossings, a Delaware limited liability company." Id.

---

[4] The Amended Complaint says "[i]n or about mid-May, 2015," but read in context this appears to be a scrivener's error. ECF No. 3 at ¶ 161.

at 3-4. Defendants elaborate that under 6 Del. C. § 18–303 of the Delaware Limited Liability Company Act, "no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company, 'whether arising in contract, tort, or otherwise,' solely by reason of being a member or acting as a manager of the limited liability company." Id. at 4 (quoting 6 Del. C. § 18–303) (footnote omitted). Therefore, Defendants posit, since "Plaintiff acknowledges that Defendant Lind was at all times acting in his capacity as the Chief Executive Officer (i.e. Managing Member) of Defendant US Crossings," "under the clear provisions of the Act, he cannot be held personally liable for any of the claims which Plaintiff has made against him." Id. at 4-5.

In response, Plaintiff argues that "Pennsylvania law applies to this case, settled in diversity" and "[c]omity does not apply as the total bar on officer liability conflicts with the public policy of Pennsylvania in holding corporate agents, officers or directors liable for their personal participation in tortious acts ostensibly committed on behalf of the principal. Here, due to the conflict of these public policies, comity cannot justly be exercised by this Court." ECF No. 20 at 2.

Under Pennsylvania's participation theory of liability, liability attaches to an individual corporate officer where the individual participated in tortious activity on behalf of the corporation. See Wicks. v. Milzoco Builders, Inc., 470 A.2d 86, 89-90 (Pa. 1983). This rule of law also is applicable to members of a limited liability company such as Defendant Lind. See Germain v. Wisniewski, 2016 WL 4158994, at *5 (W.D. Pa. Aug. 5, 2016); In re Jadczak, 2011 WL 13612, *7 (E.D. Pa. Jan. 4, 2011).

Although not mentioned by the parties in their briefs, Delaware has a similar personal participation rule which also is applicable to a member or manager of a Delaware limited

liability companies such as Defendant Lind.  In <u>Jorgensen & Company v. Sutherland</u>, 2017 WL 1395485 (D.N.J. Apr. 17, 2017), the district court recently explained:

> Delaware courts have noted that the word "solely" in the last clause of 6 Del. C. § 18-303(a) "does imply that there are situations where LLC members and managers would not be shielded by this provision." *Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*, No. 1973-S, 2000 WL 364199, at *3 (Del. Ch. Mar. 15, 2000). Indeed, under Delaware law, "corporate officials may be held individually liable for their tortious conduct, even if undertaken while acting in their official capacity." *Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, No. S10C-03-004 RFS, 2010 WL 2802409, at *4 (Del. Ch. July 12, 2010) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)); accord *Gassis v. Corkery*, No. 8868-VSG, 2014 WL 3565418, at *5 n. 24 (Del. Ch. July 21, 2014) ("[A]n individual is personally liable for all torts the individual committed.... [including] torts committed by those acting in their official capacities as officers or agents of a corporation. It is immaterial that the corporation may also be liable." (quoting 3A William Meade Fletcher, Cyclopedia of the Law of Corporations § 1135)). This is true of LLC members and managers as well, see *Duffield Assocs.*, 2010 WL 2802409, at *4 (rejecting, individual defendants' argument that they could not personally be held liable for fraud for actions committed on behalf of an LLC of which they were members), notwithstanding the existence of 6 Del. C. § 18-303(a). *Sewell v. Coviello*, CPU5-15-001302, 2016 WL 3152567, at *2 (Del. Ct. C.P. Kent Cty. Mar. 8, 2016) (rejecting the argument that 6 Del. C. § 18-303(a) bars a fraud claim against an LLC member individually).
>
> On the other hand, corporate officers may not be held liable "merely for acts or omissions of the Corporation"; for this reason, "a complaint must, at a minimum, describe affirmative actions taken by that individual directing, ordering, ratifying, approving or consenting to the tort." *Gassis*, 2014 WL 3565418, at *5.

<u>Jorgensen & Co.</u>, 2017 1395485, at *4.  <u>See also</u> <u>Yavar Rzayev, LLC. v. Roffman</u>, 2015 WL 5167930, at *6 (Del. Super. Ct. Aug. 31, 2015) (court denied motion to dismiss fraud claim brought personally against the owner/sole member of a limited liability company based on the personal participation doctrine where the allegations in the claim met the requirement that the defendant "'directed, ordered, ratified, approved, or consented to' the wrongful act.") (citing <u>Brasby v. Morris</u>, 2007 WL 949485 (Del. Super. March 29, 2007); <u>Spanish Tiles, Ltd. v. Hensey</u>, 2009 WL 86609, at *2 (Del. Super. Ct. Jan. 7, 2009) ("Regarding the tort claims, the deciding

factor is whether or not the Henseys [agents of defendant limited liability companies] personally participated in the torts of the entities, see *Brasby v. Morris* 2007 WL 949485 (Del. Super.) at *8. (The personal participation doctrine attaches liability to corporate officers for torts which "they 'commit, participate in, or inspire, even though they are performed in the name of the corporation' ... [I]ndividual liability attaches only where an officer 'directed, ordered, ratified, approved, or consented to' the tortious act in question.") Although the <u>Brasby</u> case involved a corporation, the reasoning of the personal participation doctrine applies to the limited liability context.")).

Given that both Pennsylvania and Delaware law recognize a personal participation exception for tortious conduct to the general rule that managers and members of limited liability companies are not responsible for the actions or omissions of the company, even if the Court were to apply Delaware law to the allegations contained in Plaintiff's Amended Complaint as to Defendant Lind, the analysis of these claims would not differ from an analysis of Plaintiff's claims against Defendant Lind applying Pennsylvania law. Under such circumstances, the Court will not exercise its discretion and under the principles of judicial comity apply Delaware law to Plaintiff's claims against Defendant Lind as Defendants request. To the extent that Defendants' motion to dismiss Plaintiff's claims against Defendant Lind is based on the argument that Delaware law should be applied to the issue of Defendant Lind's personal liability under principles of judicial comity, Defendants' motion is denied.

**B. Analysis of Plaintiff's claims against Defendant Lind under Pennsylvania law.**

Defendants also argue in support of their motion to dismiss Plaintiff's claims against Defendant Lind that if Pennsylvania law applies, then all of Plaintiff's non-tort claims against Defendant Lind must be dismissed for failure to state claims under Pennsylvania law upon which relief can be granted.  Id. at 5-9.  Defendants articulate in detail the legal bases under Pennsylvania law for granting their motion to dismiss Plaintiff's breach of contract, promissory estoppel, and unjust enrichment claims against Defendant Lind.[5]  Id.

Significantly, Plaintiff does not substantively argue in opposition to this argument. Instead it states "there is a sincere concern as to the direct-dealing of the Defendant Lind through the princip[al] US Crossings.  This suspicion can only be confirmed or relieved through the exercise of discovery and review of the financials of the Defendant US Crossings. Should such discovery uncover self-dealing through the corporate principal, the Plaintiff would be entitled to amend pleading for the purpose of piercing the corporate veil."  ECF No. 20 at 2.  See also id. ("[i]n this case, in alleging the personal benefit derived from breaches of the Corporation, the Plaintiff includes the Defendant Lind seeking to proceed under such a theory until it is ruled out, rather than the other way around.").  Ultimately, Plaintiff  states, "[it] respectfully acquiesces to the Defendant Lind's claim for relief that this Honorable Court dismiss the actions assumpsit against him with acknowledgment that the Plaintiff may later amend upon further discovery and investigation of the validity of the corporate entity."  Id. at 3.

The Court understands Plaintiff to be agreeing to the dismissal of all claims against Defendant Lind other than the conversion claims found in Counts XVII and XXI of the Amended Complaint so long as Plaintiff later can amend its complaint if it is able to determine

---

[5] Defendants make no argument that the conversion claims (Counts XVII and XXI) should be dismissed if the Court finds that Pennsylvania law applies. Therefore, the Court will not analyze these claims.

during discovery that US Crossings is a sham corporation and therefore, Plaintiff is entitled to pierce the company's "corporate veil" and have Defendant Lind held personally liable. As stated by the <u>Germain</u> court in its decision, "'Pennsylvania courts have found that the veil of an LLC may be pierced to the same degree as that of a corporation'." <u>Germain</u>, 2016 WL 4158994, *2, n. 1 (quoting <u>Partners Coffee Co., LLC v. Oceana Servs. & Products Co.</u>, 700 F. Supp. 2d 720, 736 (W.D. Pa. 2010) (citing <u>Advanced Tel. Sys. v. Com–Net Prof'l Mobile Radio, LLC</u>, 846 A.2d 1264, 1281, n. 11 (Pa. Super. Ct. 2004)); Schwab v. McDonald (In re LMcD, LLC), 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009)).   Nevertheless, the Court cannot guarantee at this juncture in the proceedings that Plaintiff will be permitted to amend its complaint at a later date.  Accordingly, the Court will address the merits, under Pennsylvania law, of Defendants' arguments in support of their motion to dismiss all of Plaintiff's claims against Defendant Lind but for Plaintiff's conversion claims against him.

### 1. **Plaintiff's Breach of Contract Claims against Defendant Lind.**

Plaintiff's Amended Complaint alleges breach of contract claims against both Defendant Lind and US Crossings at Count XI (related to the Clarksburg Job) and at Count XIX (related to the Moundsville Job). "'[I]t is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability," but that "a person who is contracting as an agent may be found to be personally liable where he or she either executes a contract in his or her own name or 'voluntarily incurs a personal responsibility'." <u>In re Estate of Duran</u>, 692 A.2d 176, 179 (Pa. Super. Ct. 1997) (quoting <u>Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.</u>, 320 Pa. Super. 291, 303, 467 A.2d 330, 336 (1983); <u>Vernon D. Cox & Co., Inc. v. Giles</u>, 267 Pa. Super. 411, 415, 406 A.2d 1107, 1110 (1979)).  Reviewing the factual

allegations in the Amended Complaint and all reasonable inferences therefrom, Plaintiff has alleged that Defendant Lind was acting as the agent for US Crossings with respect to "[e]ach contract of material herein pled," and relative to the Clarksburg and Moundsville jobs, Plaintiff has not alleged any facts that even suggest that Defendant Lind executed these contracts in his own name or voluntarily incurred a personal responsibility relative to these jobs. See ECF No. 3 generally; id. at ¶¶ 10, 76-82, 143-149. Accordingly, the Court finds that Plaintiff has not alleged facts sufficient to establish a plausible claim for breach of contract against Defendant Lind individually as to either the Clarksburg or Moundsville jobs. Defendants' motion to dismiss Counts XI and XIX of the Amended Complaint as against Defendant Lind for failure to state a claim upon which relief can be granted will be granted. Moreover, said dismissal is with prejudice. Plaintiff has alleged that Defendant Lind was acting as the agent of US Crossings when the parties entered into the relevant verbal contracts. Therefore, allowing Plaintiff to amend its complaint to set forth a breach of contract claim concerning either the Clarksburg or Moundsville job would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); id. at 236 ("[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

### 2. Plaintiff's Promissory Estoppel Claims against Defendant Lind.

Plaintiff's Amended Complaint alleges promissory estoppel claims against both Defendant Lind and US Crossings at Count VII (related to the Rice Rental), Count X (related to the Caldwell Job), and Count XIIII (related to the Clarksburg Job). Defendants seek dismissal of

these claims against Defendant Lind because Plaintiff has alleged that Defendant Lind was acting as the agent of US Crossings:

> Plaintiff's claims for Promissory Estoppel are . . . essentially claims for breach of contract, and the same agency principles should apply when determining whether Defendant Lind can be held personally liable therefore. Clearly, any 'promises' which form the basis for Plaintiff's Promissory Estoppel claims were made by Defendant Lind in his capacity as a representative of US Crossings, and not in his individual capacity. Under the legal principals [sic] cited above, Defendant Lind bears no personal liability for having made any such promises.

ECF No. 6 at 7.

In Geesey v. CitiMortgage, Inc., 135 F.Supp.3d 332 (W.D. Pa. 2015), the district court explained:

> The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though the promise is not supported by consideration. Shoemaker v. Commonwealth Bank, 700 A.2d 1003, 1007 (Pa. Super. 1997). To maintain an action for promissory estoppel, the Plaintiffs must show that: (i) the promisor made a promise that he or she [sh]ould have reasonably expected to induce action or forbearance on the part of the promisee; (ii) the promisee actually took action or refrained from taking action in reliance on the promise; (iii) injustice can be avoided only by enforcing the promise. Edwards v. Wyatt, 335 F.3d 261, 277 (3d Cir. 2003) (citing Crouse v. Cyclops Industries, 560 Pa. 394, 745 A.2d 606 (2000)). Pennsylvania law requires a claim for promissory estoppel to be based upon an express promise. C & K Petroleum Products, Inc. v. Equibank, 839 F.2d 188, 191 (3d Cir.1988) ("promissory estoppel would be rendered meaningless if this Court were to allow [plaintiff] to maintain an action for detrimental reliance based on the alleged existence of ... a broad and vague implied promise." See also Nabisco, Inc. v. Ellison, 1994 WL 622136, at *7 (E.D. Pa. Nov. 8, 1994) ("Allowing a claim for promissory estoppel to be based on an implied promise would in effect allow a claim to be based upon the plaintiff's subjective expectations.")).

Id. at 348-49.

### a. Count VII (related to the Rice Rental)

Reviewing the factual allegations in the Amended Complaint relative to the Rice Rental and all reasonable inferences therefrom, Plaintiff alleges: (1) the parties have entered into a series of verbal contracts for Plaintiff to provide services for and equipment to US Crossings; (2)

Defendant also agreed to return all equipment as it was received; (3) each contract was formed between the parties with Defendant Lind acting on behalf of US Crossings as its agent; (4) US Crossings and Plaintiff verbally agreed that US Crossings would rent to 312 Caterpillar Hoe and other equipment from Plaintiff and that Plaintiff would provide labor; (5) the statements of the defendants amounted to a promise to pay the Plaintiff for the use of the Plaintiff's property and any damage thereto; and (6) it would be inequitable for the Court to allow the defendants to utilize and damage the property of the Plaintiff without providing just compensation thereto." ECF No. 3, ¶¶ 40-41, 51-52. The Court finds that these factual allegations do not state a claim for promissory estoppel against Defendant Lind as an individual upon which relief can be granted. Plaintiff has failed to plead: (1) any express promise on the part of Defendant Lind that he individually would compensate Plaintiff for labor and equipment used during the Rice Rental as opposed to promising as US Crossings agent that Plaintiff would be compensated; (2) any action on the part of Plaintiff done in reliance on such a promise by Defendant Lind; or (3) how injustice can be avoided only by enforcing Defendant Lind's promise. Defendants' motion to dismiss Count VII of the Amended Complaint as against Defendant Lind is granted. Said dismissal, however, is without prejudice for Plaintiff to file a second amended complaint within two (2) weeks of the date of the filing of the Order accompanying this Opinion that states a promissory estoppel claim against Defendant Lind relative to the Rice Rental consistent with the principles discussed herein and the mandates of Rule 11 since it cannot be said that permitting such an amendment would be inequitable or futile (albeit unlikely). Alston, 363 F.3d at 235-36. Failure to timely file an amended complaint will result in this claim being dismissed with prejudice.

### b. Count X (related to the Caldwell Job)

Reviewing the factual allegations in the Amended Complaint relative to the Caldwell Job and all reasonable inferences therefrom, Plaintiff alleges: (1) the parties have entered into a series of verbal contracts for Plaintiff to provide services for and equipment to US Crossings; (2) Defendant also agreed to return all equipment as it was received; (3) each contract was formed between the parties with Defendant acting on behalf of US Crossings as its agent; (4) the parties verbally contracted for Plaintiff to do a bore near Caldwell, Ohio; (5) US Crossings used Plaintiff's equipment in completing the Caldwell job; (6) while on the Caldwell Job, US Crossings and its employees, while acting under Defendant Lind's direction, damaged some of Plaintiff's drilling equipment; (7) the defendants promised Plaintiff compensation for its work on the Caldwell Job, but have not paid Plaintiff; (8) the defendants promised Plaintiff compensation for use of its equipment on the Caldwell Job, but have not paid Plaintiff; and (9) it would be unjust to permit the defendants to benefit from the use of equipment and completion of work to the detriment of Plaintiff without providing for just compensation. ECF No. 3, ¶¶ 6-8, 10, 54, 57-58, and 70-75. The Court finds that these factual allegations do not state a claim for promissory estoppel against Defendant Lind individually upon which relief can be granted. Plaintiff has not alleged facts concerning: (1) any express promise by Defendant Lind that he individually would compensate Plaintiff for equipment used and work done on the Caldwell Job as opposed to promising as US Crossings agent that Plaintiff would be compensated; (2) any action on the part of Plaintiff done in reliance on such a promise by Defendant Lind; or (3) how injustice can be avoided only by enforcing Defendant Lind's promise. Defendants' motion to dismiss Count X of the Amended Complaint as against Defendant Lind is granted. Said dismissal, however, is without prejudice for Plaintiff to file a second amended complaint within two (2) weeks of the

filing of the Order accompanying this Opinion that states a promissory estoppel claim against Defendant Lind relative to the Caldwell Job consistent with the principles discussed herein and the mandates of Rule 11 since it cannot be said that permitting such an amendment would be inequitable or futile (albeit unlikely). Alston, 363 F.3d at 235-36. Failure to timely file an amended complaint will result in this claim being dismissed with prejudice.

### c.  Count XIII (related to the Clarksburg Job)

Reviewing the factual allegations in the Amended Complaint relative to the Clarksburg Job and all reasonable inferences therefrom, Plaintiff alleges: (1) the parties have entered into a series of verbal contracts for Plaintiff to provide services for and equipment to US Crossings; (2) Defendant also agreed to return all equipment as it was received; (3) each contract was formed between the parties with Defendant acting on behalf of US Crossings as its agent; (4) US Crossings requested, and Plaintiff agreed, to provide equipment for a bore outside of Clarksburg, WV; (5) while on the Clarksburg Job, US Crossings and its employees, while acting under Defendant Lind's direction, damaged Plaintiff's drill; (7) the defendants promised Plaintiff compensation for use of its equipment on the Clarksburg Job, but have not paid Plaintiff; and (8) it would be unjust to permit the defendants to benefit from the use of equipment and completion of work to the detriment of Plaintiff without providing for just compensation. ECF No. 3, ¶¶ 6-8, 10, 77-78, 81, and 96-97.  The Court finds that these allegations do not adequately state a claim for promissory estoppel against Defendant Lind individually upon which relief can be granted. Plaintiff has not alleged facts concerning: (1) any express promise by Defendant Lind that he individually would compensate Plaintiff for equipment used and work done on the Clarksburg Job; (2) any action on the part of Plaintiff done in reliance on such a promise by Defendant Lind; or (3) how injustice can be avoided only by enforcing Defendant Lind's promise.  Defendants'

motion to dismiss Count XIII of the Amended Complaint as against Defendant Lind is granted.

Said dismissal, however, is without prejudice for Plaintiff to file a Second Amended Complaint

within two (2) weeks of the date of the filing of this Opinion that states a promissory estoppel

claim against Defendant Lind relative to the Rice Rental consistent with the principles discussed

herein and the mandates of Rule 11 since it cannot be said that permitting such an amendment

would be inequitable or futile (albeit unlikely).   Alston, 363 F.3d at 235-36.  Failure to timely

file an amended complaint will result in this claim being dismissed with prejudice.

### 3.  Plaintiff's Unjust Enrichment Claims against Defendant Lind.

As to Plaintiff's unjust enrichment claims against Defendant Lind, found at Counts IX,

XII, XVIII, and XX of the Amended Complaint, Defendants argue that "there is no plausible

basis for holding him personally liable therefor."  ECF No. 6 at 7-8. In support thereof,

Defendants first argue that "[t]he same agency principles which shield Defendant Lind from

individual liability for breach of contract and promissory estoppel should also be applied to the

quasi-contractual claims of unjust enrichment." Id. at 8.  Second, Defendants argue that Plaintiff

has failed to plead, as it must, that Plaintiff conferred a benefit on Defendant Lind, as opposed to

US Crossings, which would be inequitable for him to retain without compensating Plaintiff.  Id.

Third, Defendants argue that Defendant Lind cannot be held liable to Plaintiff solely based on his

status as a member of US Crossings.  Id. at 9.

Pennsylvania "does not consider unjust enrichment to be either an action in tort or

contract. Unjust enrichment, rather, an equitable remedy and synonym for quantum meruit, is a

form of restitution." Powers v. Lycoming Engines, 328 F. App'x 121, 126 (3d Cir. 2009)

(internal quotation marks and citation omitted).  See also Steamfitters Local Union No. 420

Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999) ("[i]n the tort setting, an

unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched").

The Court explained in the decision denying US Crossings' motion to dismiss Plaintiff's unjust enrichment claim in Count VI of the Amended Complaint:

> An unjust enrichment claim under Pennsylvania law requires a showing that (1) "the plaintiff conferred a benefit upon the defendant"; (2) "the defendant was aware of the benefit"; and (3) "the defendant's acceptance of the benefit occurred under circumstances in which it would be inequitable for [it] to retain the benefit without payment of the value thereof." York Group, Inc. v. Pontone, 2014 WL 896632, at *20 (W.D. Pa. March 6, 2014) (citing Fabral, Inc. v. B&B Roofing Co., Inc., 773 F.Supp.2d 539, 549 n. 10 (E.D. Pa. 2011) (internal quotations omitted)).

> Avanti Wind Sys., Inc. v. Shattell, Civ. A. No. 3:14-98, 2016 WL 3211990, at *19 (W.D. Pa. June 9, 2016).

ECF No. 21 at 7. As explained in Germain v. Wisniewski, No. 15-1279, 2016 WL 4158994 (W.D. Pa. Aug. 5, 2016): "The first element of an unjust enrichment claim is a 'benefit conferred on defendant *by Plaintiff.*' 'Thus, courts have emphasized that Plaintiff's actions are core to the cause of action. "[T]he doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the Plaintiff".' "). Germain, 2016 WL 4158994, at *6.

With respect to Defendants' arguments that Defendant Lind cannot be held liable to Plaintiff on an unjust enrichment theory solely based on his status as an agent or member of US Crossings, a limited liability company, the Court agrees. The Court also agrees with Defendants that with respect to Plaintiff's unjust enrichment claims against Defendant Lind related to the Caldwell, Clarksburg, and Moundsville jobs (Counts IX, XII, and XX of the Amended Complaint), Plaintiff has failed to allege any facts that suggest that as to these jobs: (1) Plaintiff conferred a benefit on Defendant Lind individually as opposed to Plaintiff conferring a benefit

on US Crossings; (2) Defendant Lind accepted and utilized the benefits; and (3) it would be inequitable for Defendant Lind to fail to compensate Plaintiff for the benefits so conferred. Accordingly, Counts IX, XII, and XX of Plaintiff's Amended Complaint shall be dismissed as to Defendant Lind for failure to state a claim upon which relief can be granted. Said dismissal, however, is without prejudice for Plaintiff to file a second amended complaint within two (2) weeks of the date of the filing of the Order accompanying this Opinion that states unjust enrichment claims against Defendant Lind relative to the Caldwell, Clarksburg, and Moundsville jobs consistent with the principles discussed herein and the mandates of Rule 11 since it cannot be said that permitting such an amendment would be inequitable or futile (albeit unlikely). Alston, 363 F.3d at 235-36. Failure to timely file an amended complaint will result in this claim being dismissed with prejudice.

Reviewing the factual allegations in the Amended Complaint relative to the Jewett Conversion and all reasonable inferences therefrom, Plaintiff alleges: (1) "[t]he Defendants US Crossings and Lind (personally) took numerous pieces of heavy equipment without permission from the Plaintiff while the Plaintiff's CEO was in the hospital;" (2) "[a]fter Mr. Rowan's stroke, Defendant Lind unilaterally took possession of the Plaintiff's equipment and used them for his own benefit ("the Jewett Conversion");" (3) [t]he Jewett Conversion was done without permission of the Plaintiff or any of its agents;" (4) "[t]he Defendant Lind's actions included tearing all identifying company logos of the Plaintiff off of the trucks and drill;" (5) [t]he Defendant Lind further told the employees of the Plaintiff that he bought the company and its equipment from Mr. Rowan and paid the employees of the Plaintiff for two weeks of their work when he continued to operate in Jewett;" (6) "[a]s a result of the Jewett conversion as a direct result of the action of the Defendant Lind, substantial damage was done to the anchor base of the

Plaintiff's drill;" (7) "[t]he Plaintiff has not received any payment for the unauthorized use of his equipment, nor the damage done thereto;" (8) "[t]he Defendant Lind personally participated in the foregoing tort of conversion by taking personal control of items to which he had no permission, license or entitlement . . . .;" (9) "[t]he Defendants were enriched by the use of the Plaintiff's equipment and employees;" (10) "[t]he Defendants provided no compensation therefor;" and (11) "[i]t would be unjust to permit the Defendants to be enriched to the detriment of the Plaintiff without providing for just compensation therefor." Amended Complaint, ¶¶ 9, 122-125, 130, 133, 136, and 140-142. In light of Plaintiff's allegation that Defendant Lind's conduct with respect to the Jewett conversion was done without its permission, the Court finds that Plaintiff has not alleged facts to support that it took an action from which Defendant Lind benefitted. Therefore, Plaintiff has not stated a plausible unjust enrichment claim against Defendant Lind relative to the Jewett conversion and Defendants' motion to dismiss Count XVIII of the Amended Complaint as to Defendant Lind must be granted. Moreover, the Court finds that since Plaintiff has alleged that Defendant's Lind's conduct relevant to the Jewett Conversion was done without its permission, it cannot allege that it took an action from which Defendant Lind benefitted and therefore, it would be futile to allow Plaintiff to amend its complaint as to this claim. Accordingly, Defendant's motion to dismiss Count XVIII of Plaintiff's Amended Complaint is granted with prejudice. Alston, 363 F.3d at 235-36.

**V. Conclusion.**

For the reasons set forth above, the Court will grant without prejudice Defendants' Motion to Dismiss Claims against Defendant Michael Lind, Individually, (ECF No. 5) with respect to Counts VII (promissory estoppel-Rice Rental), IX (unjust enrichment-Caldwell Job), X (promissory estoppel-Caldwell Job), XII (unjust enrichment- Clarksburg Job), XIII

(promissory estoppel-Clarksburg Job), and XX (unjust enrichment- Moundsville Job) of the Amended Complaint, will grant with prejudice Defendants' Motion to Dismiss Claims against Defendant Michael Lind, Individually (ECF No. 5) with respect to Count XI (breach of contract-Clarksburg Job), XVIII (unjust enrichment-Jewett Conversion), and Count XIX (breach of contract-Moundsville Job), and will deny Defendants' Motion to Dismiss Claims against Defendant Michael Lind, Individually (ECF No. 5) with respect to Counts XVII (conversion-Jewett Conversion), and XXI (conversion) of the Amended Complaint.

A separate order will follow.

Dated:        July 10, 2017                    BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:    All Counsel of record
       *Via Electronic Mail*